**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Civil Action No. 12-CV-02528-RM

BRYAN T. ALIRES,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,[1]

    Defendant.

---

## ORDER
---

This matter is before the Court on Plaintiff Bryan T. Alires's ("Plaintiff") request for judicial review pursuant to 42 U.S.C. § 405(g). (ECF No. 1.) Plaintiff challenges the final decision of Defendant, Commissioner of the Social Security Administration, by which she denied Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act"). The Administrative Law Judge ("ALJ") ruled Plaintiff was not disabled within the meaning of the Act and therefore not entitled to DIB.

The Commissioner provided the Court with the administrative record. (ECF Nos. 15; 15-1; 15-2; 15-3; 15-4; 15-5; 15-6; 15-7; 15-8; 15-9; 16.) Plaintiff filed an opening brief (ECF No. 17) and Defendant responded (ECF No. 18). Plaintiff did not file a reply brief nor seek an extension of time in which to file such a brief. (*See generally* Dkt.) Accordingly, the matter is ripe for adjudication.

---

[1] In accordance with Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for Michael J. Astrue as Defendant in this action.

For the reasons set forth below, the Court affirms Defendant's denial of Plaintiff's DIB application.

## I. BACKGROUND

Plaintiff applied for DIB in November 2009, alleging disability as of July 10, 2009, due to the following conditions that allegedly limit his ability to work: high blood pressure, gout, kidney disease, knee replacement, torn bicep, hernia, obesity, and sleep apnea. (Admin. R. ("Tr.") at 143.) After Plaintiff's application was initially denied, Plaintiff requested a hearing before an ALJ which was held in July 2011. (Tr. 28, 64, 71.) Following the hearing, the ALJ issued a decision on August 16, 2011. (Tr. 10-23.) Plaintiff requested the Appeals Council to review the ALJ's decision and such review was denied on August 8, 2012. (Tr. 1-9.) Plaintiff timely requested judicial review before the Court. (ECF No. 1.)

### A. Background and Relevant Medical Evidence[2]

Plaintiff was born in 1967. (Tr. 32-33.) Plaintiff completed high school and also attended three years of college. (Tr. 33.) Plaintiff has previously worked as a mechanical foreman/superintendent (Tr. 52-53, 57), pump operator (Tr. 54, 58), and a pipefitter (Tr. 55, 57). Plaintiff has been unable to work since July 9, 2009. (Tr. 143.) On December 9, 2009, Plaintiff filed a disability report alleging he is disabled as a result of high blood pressure, gout, kidney disease, "DJD-knee replacement," torn bicep, hernia, obesity, and sleep apnea. (Tr. 143.)

Plaintiff has an extensive medical history of hypertension, edema, gout, and obesity. (Tr. 205.) Plaintiff also has an extensive surgical history including left knee replacement (Tr. 205), multiple hernia repairs (Tr. 205), as well as colon and small bowel resections (Tr. 205).

Throughout 2009, Marcus T. Higi, M.D., treated Plaintiff. (Tr. 205-24.) Plaintiff informed Dr. Higi that he felt fatigued. (Tr. 213.) A February 13, 2009 office visit with Dr. Higi

---

[2] The Court will not discuss impairments or conditions that are not at issue in Plaintiff's opening brief.

demonstrated that Plaintiff experienced fatigue, weight gain, swollen extremities, obesity, edema, and a hernia. (Tr. 213-16.) The evaluation demonstrated that Plaintiff was negative for joint stiffness, joint pain, muscular pain, or muscle weakness. (Tr. 214.) In comparison, Plaintiff reported joint pains and joint swelling in an earlier evaluation by Dr. Higi. (Tr. 222.)

In 2009, Plaintiff was diagnosed with sleep apnea for which treatment with a continuous positive airway pressure ("CPAP") machine was recommended. (Tr. 228-32.)

Throughout 2009, Plaintiff saw providers at the Salud Clinic. (Tr. 240-56.) In August 2009, Plaintiff saw a medical provider, Tammera Park, PA-C, a physician's assistant (hereinafter "PA Park") at Salud Clinic. PA Park noted that Plaintiff had high blood pressure, bone pain (while opining that this condition is probably related to weight and arthritis), and a nodule in the right bicep. (Tr. 241-42, 246, 249.) Plaintiff informed PA Park that he did not pass a "work physical" because of his high blood pressure. (Tr. 241.) In July 2009, PA Park assessed Plaintiff as suffering from hypertension, edema, obesity, and sleep apnea. (Tr. 246.) In December 2008, PA Park assessed Plaintiff as suffering from "fatigue and malaise related to probable sleep apnea and obesity." (Tr. 249.)

In 2009, Plaintiff received treatment from Karyl VanBenthuysen, M.D. (Tr. 258-64.) On December 22, 2009, Plaintiff reported no muscle weakness and no muscle aches to Dr. VanBenthuysen. (Tr. 258.) Plaintiff complained of some fatigue and gout-related swelling to Dr. VanBenthuysen. (Tr. 258.) Dr. VanBenthuysen determined that Plaintiff had a "normal stable gait" and "normal muscle tone." (Tr. 259.) Dr. VanBenthuysen determined that Plaintiff had no edema in his extremities. (Tr. 259.)

In January 2010, Plaintiff underwent hernia repair which was followed by complications that required his admission to a hospital. (Tr. 273-86, 328-29, 332, 338-41.) In early February

2010, Plaintiff was hospitalized for an infection around a drain that had been put in place as a result of the hernia repair.  (Tr. 233-34, 269-70, 293-311, 318-20, 323-24, 335-37, 348-49, 359-64, 366-69, 379.)

In November 2009, February 2010, April 2010, and July 2010, Plaintiff saw Mark D. Solano, M.D., for follow-up regarding his hernia surgery, his high blood pressure, and his lower back pain.  (Tr. 268-69, 378-81.)  Dr. Solano did not find Plaintiff's complaints of back pain to be substantiated.  (*See* Tr. 268-69, 378-81.)

In December 2010 and January 2011, Plaintiff received treatment for abdominal pain and pancreatitis, and underwent procedures to remove his gallbladder and clean the gallbladder duct. (Tr. 415-23, 427-33, 446, 454-60, 465-70.)

In May 2011, Richard Carson, M.D., conducted a consultative evaluation in connection with Plaintiff's application for DIB.  (Tr. 471-83.)  Dr. Carson noted Plaintiff's chief complaints of a torn bicep, right knee pain, prior left knee replacement, low back pain, sleep apnea, and gout.  (Tr. 471.)  Dr. Carson noted that Plaintiff is obese.  (Tr. 472.)  Dr. Carson examined Plaintiff's range of motion and found that Plaintiff "had full motion of his cervical spine, full motion of his lumbar spine . . . full motion of his hips, knees, ankles, shoulders, elbows, wrists, and fingers."  (Tr. 473.)  Dr. Carson determined that Plaintiff's "gait was normal . . . [and that] [h]e could toe, heel, and tandem walk."  (Tr. 473.)  Dr. Carson also completed a statement of Plaintiff's ability to do work-related activities.  Dr. Carson noted that Plaintiff could lift/carry boxes weighing between 11 to 20 pounds frequently (which means from one-third to two-thirds of the time in an 8 hour work day).  (Tr. 475.)  That Plaintiff could sit for two hours at a time without interruption; stand for 30 minutes at a time and walk for 10 minutes at a time.  (Tr. 476.) Plaintiff, in an eight-hour work day, could sit for 6 hours, stand for 6 hours, and walk for 1 hour.

4

(Tr. 476.) With respect to both hands, Plaintiff could reach, handle, finger, feel, push/pull either frequently or continuously throughout the day. (Tr. 477.) With regard to his feet, Plaintiff could operate foot controls only occasionally. (Tr. 477.) With respect to postural activities, Plaintiff could never climb stairs/ramps/ladders/scaffolds; could frequently balance/stoop; and could occasionally kneel/crouch/crawl. Dr. Carson determined that Plaintiff could "ambulate without using a wheelchair, walker, or 2 canes or 2 crutches." (Tr. 480.) But Dr. Carson determined that Plaintiff could not "walk a block at a reasonable pace on rough or uneven surfaces." (Tr. 480.)

In November 2011, Plaintiff was diagnosed with colon cancer. (Tr. 489.)

### B. The ALJ's Decision

ALJ Michael Heitz issued his decision on August 16, 2011 denying Plaintiff DIB. (Tr. 10-23.) In reaching his decision, ALJ Heitz followed the five-step sequential evaluation process for evaluating disability claims. (Tr. 13-23.) ALJ Heitz found that Plaintiff met the insured status requirements through December 31, 2013. (Tr. 15.) ALJ Heitz found that Plaintiff had not engaged in substantial gainful activity since July 10, 2009, the alleged onset date. (Tr. 15.) ALJ Heitz found that Plaintiff had the following severe impairments: "hernias, gout, knee surgery and pain, pain in back, swelling in hands and legs, sleep apnea, gout [sic], and obesity." (Tr. 15.) ALJ Heitz found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments described in in Appendix 1 of the Social Security Regulations. (Tr. 15-16.) ALJ Heitz found Plaintiff's residual functional capacity ("RFC") to be as follows:

> The claimant . . . [can] perform a range of light work as defined in 20 C.F.R. 404.1567(b) except that the claimant can lift/carry 20 pounds occasionally and 10 pounds frequently; sit 1 hour at a time and 6 hours a day; stand 30 minutes at a time and 6 hours a day; walk 10 minutes at time and 1 hour a day; occasionally kneel, crouch and use leg controls bilaterally; frequently reach and handle bilaterally; and frequently stoop and balance. The claimant must avoid exposure

>to unprotected heights, open machinery and concentrated levels of fumes and odors.

(Tr. 16.) ALJ Heitz found that Plaintiff is unable to perform any past relevant work. (Tr. 21.)

Based on the vocational expert's testimony which in turn was predicated on ALJ Heitz's functional capacity determination and in consideration of Plaintiff's age, education, and work experience, ALJ Heitz found that there were jobs that existed in significant numbers in the national and state-wide economy that Plaintiff could perform — including furniture rental consultant and tanning salon attendant. (Tr. 22.)

Therefore, ALJ Heitz concluded that Plaintiff was not disabled. (TR. 22-23.)

### C. Procedural History

Plaintiff appealed the ALJ's decision. (Tr. 8.) On August 8, 2012, the Appeals Council denied Plaintiff's appeal. (Tr. 1-6.) Plaintiff appeals that decision by bringing this lawsuit. (ECF No. 1.)

## II. LEGAL STANDARDS[3]

### A. Standard of Review

The Court reviews the Commissioner's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citations omitted). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Id*. (citation omitted). "It requires more than a scintilla, but less than preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citation omitted).

Although a district court will "not reweigh the evidence or retry the case," it "meticulously examine[s] the record as a whole, including anything that may undercut or detract

---

[3] C.F.R. citations are to part 404—which addresses DIB claims.

from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007) (citation omitted); *see also* 42 U.S.C. § 405(g). Evidence is not substantial if it is overwhelmed by other evidence in the record. *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005) (citation omitted). In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the agency. *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006) (citation omitted). As the Tenth Circuit Court of Appeals observed in *Baca v. Dep't of Health & Human Servs.*, 5 F.3d 476, 480 (10th Cir. 1993), the ALJ also has a basic duty of inquiry to "fully and fairly develop the record as to material issues." *Id.* at 479-80 (citations omitted). This duty exists even when the claimant is represented by counsel. *Id.* at 480 (citations omitted).

Also, "[t]he failure to apply the correct legal standard or to provide [a reviewing] court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (citation and internal quotation marks omitted); *see also Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996) ("[T]he Secretary's failure to apply the correct legal standards, or to show us that [he] has done so, are . . . grounds for reversal.") (Citation omitted.)

### B.     Evaluation of Disability

The criteria to obtain DIB under Title II of the Act are that a claimant meets the insured status requirements, is younger than 65 years of age, files an application for a period of disability, and is under a "disability" as defined under Title II of the Act. 42 U.S.C. §§ 416(i) and 423(a); *Flint v. Sullivan*, 951 F.2d 264, 267 (10th Cir. 1991). In addition, the individual's disability must have begun before his or her disability-insured status has expired. 20 C.F.R. § 404.101; Social Security Ruling ("SSR") 83-10, 1983 WL 31251, at *8 (1983).

The Act defines an individual as disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 423(d)(2)(A); *Barnhart v. Walton*, 535 U.S. 212, 214-15 (2002).

There is a five-step sequence for evaluating a disability. *See* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987) (describing five-step analysis). If it is determined that a claimant is or is not disabled at any point in the analysis, the analysis ends. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991) (citation omitted). First, the claimant must demonstrate that he or she is not currently involved in any substantial, gainful activity. 20 C.F.R. § 404.1520(b). Second, the claimant must show a medically severe impairment or combination of impairments that significantly limits his or her physical or mental ability to do basic work activities. *Id*. at § 404.1520(c). Third, if the impairment matches or is equivalent to an established listing under the governing regulations, the claimant is judged conclusively disabled. *Id*. at § 404.1520(d). If the claimant's impairment does not match or is not equivalent to an established listing, the analysis proceeds to fourth step. *Id*. at § 404.1520(e). Fourth, the claimant must show that the "impairment prevents [him or her] from performing work [he or she] has performed in the past." *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988) (citations omitted); *accord* 20 C.F.R. § 404.1520(f). If the claimant is able to perform his or her previous work, he or she is not disabled. 20 C.F.R. § 404.1520(f). Fifth, the Commissioner must demonstrate: (1) that based on the claimant's residual functional capacity

8

("RFC"), age, education, and work experience, the claimant can perform other work; and (2) the work that the claimant can perform is available in significant numbers in the national economy. *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987) (citation omitted); *see also* 20 C.F.R. § 404.1520(g).

### III.   ANALYSIS

Plaintiff raises several issues for consideration, including: (1) that the ALJ's findings do not include all of Plaintiff's physical limitations—*i.e.*, that the RFC determination is inconsistent with, *inter alia*, Plaintiff's obesity (including its combined effects on Plaintiff) and right bicep injury (ECF No. 17 at 10-12); (2) that the ALJ erred in finding that Plaintiff's impairments did not meet or equal an impairment Listing at 1.02A (ECF No. 17 at 13-15); (3) that the ALJ erred in his credibility determination of Plaintiff's subjective complaints (ECF No. 17 at 15-19); (4) that the ALJ erred in finding Plaintiff not disabled (ECF No. 17 at 19-20); and (5) that the Appeals Council erred in declining to consider evidence submitted after the ALJ issued his decision (ECF No. 17 at 21-22).

Because the Court finds that the ALJ's findings were supported by substantial evidence and free of harmful legal error, the Court affirms Defendant's decision.

### A.   The ALJ Properly Considered Plaintiff's Impairments Alone and in Combination with Each Other

"[A]n ALJ is required to consider all of the claimant's medically determinable impairments, singly and in combination; the statute and regulations require nothing less" and a failure to do so "is reversible error." *Salazar*, 468 F.3d at 621 (citations omitted); *accord* 42 U.S.C. § 423(d)(2)(B); *accord* 20 C.F.R. § 404.1523. If a claimant's impairments are medically severe, the Commissioner must consider the combined impact of the impairments throughout the disability determination process. *Langley v. Barnhart*, 373 F.3d 1116, 1124 (10th Cir. 2004)

(citation omitted).

The United States Supreme Court has adopted what is referred to as a "de minimus" standard with regard to the step two severity standard: "[o]nly those claimants with slight abnormalities that do not significantly limit any 'basic work activity' can be denied benefits without undertaking' the subsequent steps of the sequential evaluation process. *Bowen*, 482 U.S. at 158 (O'Connor, J., concurring); *see also* 20 C.F.R. §§ 404.1520(c), 404.1521(a).

Plaintiff argues the ALJ erred at Step Two by failing to consider the cumulative effects of Plaintiff's impairments. (ECF No. 17 at 10-13.) Plaintiff argues the ALJ erred at Step Two by failing to find his right biceps injury a severe medical impairment which then impacted the ALJ's RFC determination. (ECF No. 17 at 12.)

      1.    <u>Plaintiff's Obesity</u>

Plaintiff argues the ALJ failed to consider Plaintiff's obesity in relation to his ability to perform basic work activities. (ECF No. 17 at 11-12.) The Court is not persuaded. The ALJ determined Plaintiff's obesity to be a severe impairment. (Tr. 15.) The ALJ found that "[Plaintiff's] obesity reasonably has some impact on functioning, but not beyond the residual functional capacity set forth [therein]." (Tr. 20.) The ALJ considered Plaintiff's obesity in relation to his other medically determinable impairments. (Tr. 17 ("The claimant alleges that [his high blood pressure, gout, kidney disease, degenerative joint disease, knee replacement, torn bicep, hernia, obesity, and sleep apnea] limit his ability to work because of constant pain and weakness in his hands, legs and feet such that he cannot lift or "do a lot" of walking or bending and cannot climb stairs or ladders."); Tr. 19 ("As to the claimant's obesity, edema and obstructive sleep apnea . . . "); Tr. 20 ("To the extent the [ALJ] relied on any medical source opinions, the effects of the claimant's obesity were considered and are incorporated into the

residual functional capacity.").) The Court finds free of legal error the ALJ's consideration of Plaintiff's obesity and its combination with his other impairments.

    2.    <u>Plaintiff's Torn Bicep</u>

Plaintiff argues the ALJ erred in failing to find Plaintiff's right bicep injury a severe medical impairment which then impacted the ALJ's RFC finding. (ECF No. 17 at 12.) The Court is not persuaded.

Plaintiff complained of pain in his right arm. (Tr. 471.) "[D]isability requires more than mere inability to work without pain." *Ray v. Bowen*, 865 F.2d 222, 225 (10th Cir. 1989) (internal quotation and citation omitted). In order for pain to be "disabling," the "pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment." *Musgrave v. Sullivan*, 966 F.2d 1371, 1376 (10th Cir. 1992) (citations omitted).

Regardless if the ALJ committed an error in not finding Plaintiff's right bicep injury to be a severe medical impairment, "any [such] error became harmless when the ALJ reached the proper conclusion that [Plaintiff] could not be denied benefits conclusively at [S]tep [T]wo and proceeded to the next step of the evaluation sequence." *See Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008). In this matter, the ALJ did not find Plaintiff's right bicep injury to be a severe medical impairment at Step Two. (*See generally* Tr. 3.) Any error in this finding became harmless, when the ALJ considered the effect of Plaintiff's right bicep injury on Plaintiff's RFC. (Tr. 16 ("…claimant can/lift carry 20 pounds occasionally and 10 pounds frequently…frequently reach and handle bilaterally . . .") The ALJ relied upon Dr. Carson's findings regarding Plaintiff's functional limitations which are a "combination of his knee disease, biceps injury and ventral hernia." (Tr. 21.) This corresponds to the requirement that the Commissioner is required

to evaluate the combined impact of a claimant's impairments throughout the disability process. 42 U.S.C. § 423(d)(2)(C). Because Plaintiff's right bicep injury causes him pain, the Commissioner had to "demonstrate that sufficient jobs exist in the national economy that the claimant may perform given the level of pain he suffers." *Hargis v. Sullivan*, 945 F.2d 1482, 1490 (10th Cir. 1991). The ALJ relied upon the examining physician's report that Plaintiff reported to Dr. Carson that he could "lift and carry 30 pounds or so without problems with the left arm, with pain with the right arm. He can push and pull against slight resistance. He can reach." (Tr. 472; accord Tr. 21.) Dr. Carson's statement of Plaintiff's ability to do these activities corresponds to Plaintiff's statement to him. (Tr. 475, 477.) The ALJ's RFC accounts for these bicep-related limitations. (*Compare* Tr. 16, 20 *with* Tr. 475.) Because the ALJ's RFC accounts for these bicep-related limitations, the Court finds free of legal error the ALJ's consideration of Plaintiff's right bicep injury and its combination with his other impairments.

## B. The ALJ Properly Found Plaintiff's Impairments Do Not Meet or Equal an Impairment Listing at 1.02A

"To show that an impairment or combination of impairments meets the requirements of a listing, a claimant must provide specific medical findings that support each of the various requisite criteria for the impairment." *Lax*, 489 F.3d at 1085 (citations omitted); 20 C.F.R. § 404.1513(a) (discussing acceptable medical sources).

Plaintiff argues the ALJ erred at Step Three by failing to find that Plaintiff's impairments met or equaled Listing 1.02A. Listing 1.02A, in pertinent part, describes a major dysfunction of a joint(s) due to any cause as

> characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankyloses of the affected joint(s). With:

12

      A.      Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b.[4]

20 C.F.R. Pt. 404, subpt. P, App. 1, Listing 1.02A.

The ALJ found that Plaintiff had the following severe physical impairments: "hernias, gout, knee surgery and pain, pain in back, swelling in hands and legs, sleep apnea, gout [sic], and obesity." (Tr. 15.) The ALJ found that Plaintiff "d[id] not have an impairment or combination of impairments that m[et] or medically equal[ed] one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. . . ." (Tr. 15.) The ALJ found that Plaintiff did not satisfy Listing 1.02A. (Tr. 16.) The ALJ found that neither "the findings of the consultative examining physician or the treatment records document the level of ineffective ambulation that [is] necessary to meet/equal section 1.02." (Tr. 16.)

Plaintiff argues that the ALJ failed to account for "Dr. Carson's opinion that Mr. Alires[] cannot ambulate effectively." (ECF No. 17 at 13.) Plaintiff, however, has the burden to present evidence establishing that his impairments meet or equal listed impairments. *Bowen*, 482 U.S. at 146 n.5; *see Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005); *see also* 20 C.F.R. §§ 404.1526(b)(2)-(3), 404.1509. Given the evidence before him, the ALJ's finding is supported by a substantial portion of it.

For example, the medical record indicates that Plaintiff had normal motion of various joints and no abnormal motion of the knees (to which Plaintiff takes issue (ECF No. 17 at 13). (Tr. 215, 473.) Plaintiff counters that Dr. Carson opined Plaintiff cannot walk a block at a

---

[4] "Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. . . ." 20 C.F.R. Pt. 404, subpt. P, App.1 § 1.00B2b(1).

reasonable pace on rough or uneven surfaces. (ECF No. 17 at 13-14 (citing Tr. 480).) That evidence, however, merely shows a limitation on Plaintiff's ability to ambulate effectively. (Tr. 480.) It does not show an "inability to ambulate effectively, as defined in 1.00B2b." (*See* Tr. 480.) Specifically, the ALJ relied upon (Tr. 20) Dr. Carson's finding that Plaintiff had "full motion of his hips, knees, ankles, shoulders, elbows, wrists, and fingers…His gait was normal. He *could* toe, heel, and *tandem walk*" (Tr. 473). The regulations provide an example of ineffective ambulation includes "the inability to walk without the use of a walker, two crutches or two canes, [*and*] the inability to walk a block at a reasonable pace on rough or uneven sources." 20 C.F.R. Part 404, subpt. P, app. 1 § 1.00B(2)(b)(2) (emphasis added). Here, Dr. Carson found that Plaintiff *does not* require a cane to ambulate. (Tr. 21, 476.) Without citation to the record, Plaintiff argues that it was "Dr. Carson's opinion to find Mr. Alires [] disabled at step three." (ECF No. 17 at 14.) The Court is unable to find support in the record for Plaintiff's argument.

The Court's role is limited to reviewing "the *sufficiency* of the evidence, not its weight[.]" *Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007) (emphasis in original and citation omitted). The Court finds that substantial evidence supports the ALJ's finding that Plaintiff's impairments or combination thereof do not meet or equal Listing 1.02A for major joint dysfunction.

    **C.**    **The ALJ Properly Found Plaintiff Not Credible and His Assessment Is Supported by Substantial Evidence**

"Credibility determinations are peculiarly the province of the finder of fact, and [the Court] will not upset such determinations when supported by substantial evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (internal quotation and citation omitted). "Findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a

conclusion in the guise of findings." *Kepler*, 68 F.3d at 391 (internal quotation and citation omitted). The ALJ must set forth specific medical and non-medical evidence relied on in determining the claimant's subjective complaints not credible. *Kepler* does not require a formalistic factor-by-factor recitation of the evidence. *Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009). So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the dictates of *Kepler* are satisfied. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). Inconsistencies are a reasonable basis upon which to find a claimant not credible. *Wilson v. Astrue*, 602 F.3d 1136, 1146 (10th Cir. 2010).

In determining Plaintiff's RFC, the ALJ properly discounted Plaintiff's subjective complaints regarding the intensity, persistence, and limiting effects from his alleged disabilities. (Tr. 16-19.) The RFC is the most a claimant can do despite his limitations. 20 C.F.R. § 404.1545(a)(1). The ALJ considered all of Plaintiff's medically determinable impairments, including those that are not severe, in determining Plaintiff's RFC. *See* 20 C.F.R. § 404.1545(a)(2). The ALJ properly considered the record as a whole, including the medical evidence and the credibility of Plaintiff's subjective statements. 20 C.F.R. §§ 404.1529, 404.1545(a); *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004); SSR 96-8p, 1996 WL 374184, at *2. The RFC analysis must explain "how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence". SSR 96–8p. The ALJ's articulation of a claimant's RFC must include:

> the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis . . . and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

*Id.* at *7. The ALJ's findings regarding the RFC must be supported by substantial evidence. *See*

*Haddock v. Apfel*, 196 F.3d 1084, 1088 (10th Cir. 1999) (citation omitted).

In assessing credibility, the ALJ properly considered the consistency of nonmedical testimony with objective medical evidence. *Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988) (citation omitted); SSR 96-7p (July 2, 1996), 1996 WL 374186 at *5-6. The ALJ properly considered the factors set forth in SSR 96-7p. With regard to Plaintiff's daily activities, the ALJ noted an inconsistency between Plaintiff's testimony and his statements to the evaluating physician shortly prior to the administrative hearing. (Tr. 18.) Specifically, at the hearing, Plaintiff testified that his back pain limits his sitting to 20-40 minutes. (Tr. 18, 47-48.) But previously he told Dr. Carson that he could sit for one hour. (Tr. 18, 472.) No medical evidence substantiates Plaintiff's claim that he can sit only for 20-40 minutes. Thus, the ALJ properly discredited Plaintiff's statement regarding the limitations caused by his disabilities in regards to his ability to sit. *See Huston*, 838 F.2d at 1132. Plaintiff testified that he had to nap twice a day for one hour each time. (Tr. 18, 42-43.) It is true Plaintiff reported feeling fatigued to his medical providers (Tr. 213, 218, 222, 258) and Plaintiff's combined sleep apnea and obesity may cause fatigue which affects the individual's physical and mental ability to sustain work activity, SSR 02-1p (Sept. 12. 2002), 2000 WL 628049, at *6. No medical evidence substantiates Plaintiff's claim, however, that he has to nap twice a day. Plaintiff never reported to a medical provider that he has to nap twice a day. Medical providers found Plaintiff to be alert during examinations. (Tr. 241, 246, 262, 472.) Thus, the ALJ properly discredited Plaintiff's claim that he needs these naps. *See Kelly v. Chater*, 62 F.3d 335, 338 (10th Cir. 1995); *see also Huston*, 838 F.2d at 1132.

Plaintiff argues that the ALJ erred in finding him not credible based upon his (1) receipt of unemployment benefits (ECF No. 17 at 17); (2) attempts to secure work despite his medical

problems (ECF No. 17 at 17-18): and (3) inability to treat his medical conditions despite the lack of financial resources (ECF No. 17 at 18-19.) The Court agrees that the ALJ's credibility determinations with respect to these three aspects of Plaintiff's case are suspect. However, it is not the Court's role to reweigh the evidence and make a credibility determination. *Kepler*, 68 F.3d at 391. Substantial evidence supports the ALJ's credibility determination, *i.e.*, the lack of medical evidence in support of Plaintiff's administrative hearing testimony and Plaintiff's inconsistent to statements to medical providers/examiners in comparison to his administrative hearing testimony, to affirm the ALJ's credibility determination. *See White v. Barnhart*, 287 F.3d 903, 909-10 (10th Cir. 2001). The ALJ's credibility determination did not rest on mere boilerplate language or a conclusion in the guise of findings, but instead was linked to specific factual findings which the Court is compelled to accept because they are fairly derived from the record.

### D. Substantial Evidence Supports the ALJ's Disability Determination

Plaintiff argues that because the ALJ's RFC determination was deficient, the ALJ could not then rely on the vocational expert's testimony. (ECF No. 17 at 20.) Plaintiff's arguments regarding deficiencies in the ALJ's RFC determinations have been rejected previously. *See supra* Sections III.A and III.C. The hypothetical question to the vocational expert must "include all (and only) those impairments borne out by the evidentiary record." *Evans v. Chater*, 55 F.3d 530, 532 (10th Cir. 1995) (citations omitted). Plaintiff argues that his "complaints of severe fatigue, which reasonably [caused] him to need to lie down during the day and [medical records] document[] his complaints of pain due to gout in his hands." (ECF No. 17 at 20.) As discussed previously, no evidentiary basis substantiates Plaintiff's testimony that he needed to take lie down during the day. As the ALJ found, during Plaintiff's evaluation with the consultative

examiner, he did not note any problems with his hands which led to a finding that Plaintiff can manipulate objects with his hands. (Tr. 18, 471-73, 477.) Therefore, the ALJ properly excluded these limitations from the RFC. Because the vocational expert's testimony was based on a correctly determined RFC, substantial evidence supports the ALJ's conclusion that Plaintiff is not disabled.

### E. The Appeals Council Did Not Err in Declining to Consider Plaintiff's Evidence Submitted Subsequent to the ALJ's Decision

Plaintiff argues that the Appeals Council erred in its failure to consider an opinion by Dr. Solano submitted after the ALJ's decision. (ECF No. 17 at 21-22.)

The Appeals Council reviewed the additional information. (Tr. 1-2, 5-6, 197-201, 484-96.) The Appeal Council "found that this information [did] not provide a basis for changing the Administrative Law Judge's decision." (Tr. 2.)

The Appeals Council must consider additional evidence submitted with a request for review "if the additional evidence is (a) new, (b) material, and (c) relate[d] to the period on or before the date of the ALJ's decision." *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004) (internal citations omitted). Plaintiff argues that Dr. Solano's opinion is a retrospective opinion based on his treating Plaintiff. (ECF No. 17 at 21 (referring to Tr. 494-96).) The ALJ issued his decision on August 16, 2011. (Tr. 23.) Dr. Solano's medical opinion is dated October 28, 2011 and refers to an examination that occurred on August 23, 2011. (Tr. 494-96.) Dr. Solano's opinion fails to indicate that it relates to any period prior to the date it was issued. (*See generally* Tr. 494-96.)[5] Therefore, the Appeals Council correctly determined that Dr. Solano's opinion did not relate to the period at issue and did not affect the ALJ's decision. *Chambers*, 389 F.3d at 1143 (citing 20 C.F.R. § 404.970(b).)

---

[5] The Court notes that Dr. Solano previously treated Plaintiff. (Tr. 268-69, 378-81.)

**IV.     CONCLUSION**

Based on the foregoing, the Court:

(1)     AFFIRMS Defendant's denial of disability insurance benefits.

DATED this 15th day of April, 2015.

                                            BY THE COURT:

                                            RAYMOND P. MOORE
                                            United States District Judge